IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | Case No. 17 CR 404 |
| ) | |
| RODNEY MILLER ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Rodney Miller pled guilty to a charge of receipt of child pornography. The underlying facts, as set out in Miller's plea agreement, involved Miller's participation in Internet-based video conferences during which child pornography was streamed and shared by various participants and viewed by other participants. Miller recorded some of the video conferences and saved them on his computer, presumably for future viewing. This and other computer files containing child pornography were seized from Miller pursuant to a search warrant. The seized material included a Skype message in which Miller claimed to have had forced sexual contact with his and his wife's adopted son when he was of preschool age—though investigating agents, who interviewed the son, reported that he had no memory of any such thing.

Miller pled guilty in November 2017. The charge to which he pled guilty carried a mandatory minimum prison term of five years. The advisory range under the Sentencing Guidelines was 121 to 151 months imprisonment. The Probation Office recommended a below-range sentence of eighty-four months (seven years). At sentencing, the Court stated that it viewed the Guidelines offense level as artificially inflated by certain factors that are present in nearly all child pornography cases but that

are considered as offense-level enhancements under the Guidelines. The Court imposed a sentence of eighty-four months, the same as the Probation Office's recommendation.

Miller was detained from the time of his arrest on June 21, 2017. He is serving his sentence at Ashland FCI in Kentucky. Thus far, he has served forty-two months, in other words three and one-half years.

Miller has filed a motion for early release under 18 U.S.C. § 3582(c)(1)(A). He cites his medical condition and the risks posed by the coronavirus. When the government filed its response to Miller's motion on May 28, 2020, there was not a single confirmed positive case of coronavirus at Ashland FCI. Since then, however, the prison, like most of the country, has experienced a very significant increase in coronavirus cases. Specifically, as of today's date, a total of 330 inmates have tested positive. Thankfully, of these 307 have recovered. There are twenty-three currently active cases, though the actual positivity rate is almost certainly higher, as BOP is not conducting anything close to universal testing. Five inmates have died from the virus. And forty-four correctional personnel have been or are currently infected. *See* https://www.bop.gov/coronavirus/ (last visited Dec. 22, 2020). The Court acknowledges the efforts of the Bureau of Prisons to prevent and control the spread of the virus at the prisons it administers, but at this point it is fair to say that the virus has been and is widespread within Ashland FCI. And there is no reason to believe this will change anytime soon.

Miller's presentence report and medical records establish that he suffers from an immune disorder and other medical conditions that make it far more likely that he will have a bad outcome if he contracts the coronavirus. *See*

2

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited Dec. 22, 2020). The government agrees; it concedes that Miller's "health condition represents an 'extraordinary and compelling reason' for a sentence reduction." Gov't's Resp. to Def.'s Mot. for Release at 14 (heading), 16.

Miller's motion is made under section 603(b) of the First Step Act, which amended 18 U.S.C. § 3582(c)(1)(A) to provide a greater role for courts in determining whether to reduce a defendant's sentence based on "extraordinary and compelling reasons" warranting a reduction. As amended, and as applicable here, the statute provides that

> [t]he court may not modify a term of imprisonment once it has been imposed except that—
>
> (1)  in any case—
>
> (A)      the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction;
>
> . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Miller has satisfied the statute's administrative exhaustion requirement. Specifically, in May 2020 he made a request to the warden of Ashland FCI seeking compassionate release based on his health (he had previously requested compassionate release on other grounds). The warden has not responded. That is sufficient under section 3582(c)(1)(A).

In addition, as the Court has indicated, it is undisputed that there are "extraordinary and compelling reasons" that permit a sentence reduction. The coronavirus outbreak, the virus's confirmed and increasing presence at Ashland FCI and the evidence that it is not well-controlled there, and the significant risk the virus poses to Miller due to his serious immune disorder and his medical condition certainly qualify, as the government concedes.

Third, a reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." The policy statements issued by the Sentencing Commission even before the passage of the First Step Act included an open-ended provision broad enough to cover the circumstances argued by Sullivan. *See* U.S.S.G. § 1B1.13, app. note 1(D). *See, e.g., United States v. Reyes*, No. 04 CR 970, 2020 WL 1663129, at *2 (N.D. Ill. Apr. 3, 2020) (Leinenweber, J.); *cf. United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) (court may rely on pre-First Step Act policy statements by Sentencing Commission in determining what constitutes an extraordinary and compelling reason warranting release).

Finally, section 3582(c)(1)(A) requires the Court to consider the factors regarding imposition of an appropriate sentence set forth in 18 U.S.C. § 3553(a). These include Miller's history and characteristics; the nature and circumstances of the crimes; due consideration of the seriousness of the crimes; promoting respect for the law; providing

4

just punishment; affording adequate deterrence; protecting the public from further crimes by Miller; and providing him with any necessary services and treatment.

The amount of time served to date by Miller does not adequately account for the seriousness of his offense; the Court concluded as much when it sentenced him to a prison term of eighty-four months. Under normal circumstances—in other words, in the absence of the coronavirus pandemic—there would be no basis to revisit the sentence now. That said, it would be difficult to say that serving three and one-half years in a federal prison is light punishment. And although this is a good deal less than the Court expected him to serve, matters have changed significantly since that time. Miller, who has a severely compromised immune system, is now exposed to an infectious and dangerous virus, the spread of which is increased in a prison environment due to the inability of inmates to socially-distance in any consistent way and the constant influx of persons from other environments, specifically correctional personnel who themselves are exposed to others while off work. Miller is undeniably at risk of a severe outcome if he contracts the virus. In short, he faces a significant risk of serious bodily harm. Requiring him to be subjected to this severe risk for more than the extended period he has already faced it—given the length of time the coronavirus pandemic is likely to persist—does not, in the Court's view, amount to just punishment, nor does it promote respect for the law. The Court also believes that the amount of time that Miller has served to date is just as likely to deter him from committing similar crimes in the future as the longer sentence the Court imposed.

Miller, given his apparent penchant for child pornography, does present a potential risk to others following release, including the children depicted in child pornography, who are victimized not only when they are filmed but also when their images are viewed by

5

others. But the Court has already imposed a ten-year term of supervised release with extremely stringent conditions involving non-contact with minors, restriction of access to the Internet and other sources of child pornography, and sex offender counseling and treatment. These conditions are likely to protect the community from Miller if he is tempted to reoffend in the future. And as part of the order for compassionate release, the Court will increase Miller's term of supervised release by four years to account for his earlier-than-expected release from prison and will require home detention with electronic monitoring for a period of eighteen months.

For these reasons, the Court grants Miller's motion to reduce his sentence, and reduces his sentence to time served. As stated, as a condition of reducing Miller's prison term, the Court will increase the term of supervised release to fourteen years. The Court will also amend the conditions of supervised release to add a condition of eighteen months of home detention with location monitoring. In this way, Miller's liberty will continue to be restricted in a very significant way for the next year and a half, and he will be under close supervision under stringent conditions for a total of fourteen years.

The Court is giving Miller a significant break in reducing his prison sentence. The Court is doing so because it believes this is warranted under the circumstances. But Miller should be aware that if he violates the conditions of his supervised release, knowing full well that this will subject him to reimprisonment, the Court will not hesitate to reincarcerate him, irrespective of his medical condition.

## Conclusion

For the reasons stated above, the Court grants defendant Rodney Miller's motion for compassionate release [62]. The Court reduces the defendant's prison sentence to time served. The date of release is stayed until January 7, 2021 so that Ashland FCI

6

may place the defendant in quarantine prior to release for as close to fourteen days as possible given the January 7 release date. The sentence reduction is conditioned upon amendment of the judgment to include a term of supervised release of fourteen years (as compared with the current term of ten years), and addition of a condition stating that Miller must serve the first eighteen months of his supervised release on home detention. Compliance with this condition shall be monitored by a form of location monitoring technology selected at the discretion of the probation officer, and the defendant shall abide by all technology requirements. the defendant shall abide by all technology requirements. All other previously imposed conditions of supervised release will remain as-is. The Clerk will prepare an amended judgment and commitment order. The Marshal is directed to immediately transmit this order and the amended judgment and commitment order to Ashland FCI.

Date: December 22, 2020

_____
MATTHEW F. KENNELLY
United States District Judge